OPINION
GARY P. SULLIVAN, Chief Justice.
The Tribal Prosecutor appeals from a bench trial judgment of not guilty, the Honorable Marvin Youpee, presiding. The denial of the prosecution’s motion for continuance based on the Tribes’ failure to summons a key witness was an abuse of discretion by the Trial Court. We reverse and remand.
BRIEF FACTUAL OVERVIEW AND PROCEDURAL HISTORY
On February 25, 2000, Joe Beston Sr. reported that two males had broken into a house being renovated which was located at 322 Helena Street, Wolf Point, MT. *231 Beston become aware of the incident and called the Tribal Police when he arrived at the subject house to perform work and found Ryan Miller passed out on the floor and the defendant, Tom Stafne (hereafter “Tom”), sitting on the floor drinking beer. Beston noticed several holes in the walls of the house and a crow bar stuck in the living room wall. Beston told the officer that the house did not “look like this the day before.” Beston also reported that Stafne told him that the walls had to be replaced anyway, however, Beston said that he was only going to patch the walls. Miller and Stafne left the scene before the Tribal Police Officer, Elizabeth Greybear arrived. Greybear, during her investigation of the matter, learned that a neighbor, Karen Todd[1], had reported that at 3:00 a.m. on February 25, 2000, she saw Ryan Miller and another person throwing something at the living room wall. In her statement later that same morning, Karen reported that they must have been throwing it with a great force because she could hear it across the street from her home. Greybear also learned that Ryan Miller was the son of Rodney Miller, the owner of the house. The officer requested warrants for the arrest of Ryan Miller and Tom Stafne, alleging Criminal Mischief, a violation of Title III CCOJ 2000 § 306[2] and Criminal Trespass, a violation of Title III CCOJ § 303[3].
On February 28, 2000 the Tribal Court issued the warrants. Tom was arrested February 29, and arraigned the same day, pled not guilty and was released on his own recognizance pending a bench trial[4] on April 14, 2000. At the pre-trial conference on March 7, the prosecution listed five witnesses: Officer Greybear, Joe Be-ston Sr., Russell (Boze) Corpron, Rita Brown, and Karen Todd. Tom did not provide a witness list. At the commencement of the trial, the prosecution made a Motion for Continuance on the ground that if the trial were to go forward, the Tribes case would be prejudiced because a key witness (Karen Todd) was not served a subpoena to appear. The motion was denied and the trial proceeded. The Tribal Court held that there was no witness to the alleged crime and found the defendant not guilty. The prosecutor filed a timely NOTICE OF APPEAL on April 18, 2000, contending that Karen Todd had witnessed the incident, that the lack of service was not the fault of the prosecution and the Tribal Court’s denial resulted in a miscarriage of justice.
ISSUE PRESENTED
The Tribal Prosecutor contends that denying the Motion for Continuance was extremely prejudicial to the Tribes; arguing that it was not the prosecution’s fault that their key witness was not served a subpoena to appear for the trial, and that, the penalty for failure of the Court to issue the subpoena or the failure of the Tribal Police to serve the witness, ought not to be visited upon the Tribes. This raises an issue of first impression in our Court:
Whether the Tribal Court abused its discretion by denying a Motion to Continue which was based upon failure to service a material witness?
STANDARD OF REVIEW
“The jurisdiction of the Court of Appeals shall extend to all appeals from final or *232 ders and judgments of the Tribal Court. The Court of Appeals shall review dc novo all determinations of the Tribal Court on matters of law, but shall not set aside any faetual determinations of the Tribal Court if such determinations are supported by substantial evidence.” Title II CCOJ 2000 § 202. We review the Tribal Court’s denial of the motion for abuse of discretion.
DISCUSSION
Title VI CCOJ 2000 §§ 502-503[5] govern the issuance and service of subpoenas. We note that § 502 assures the service of the defendant’s witnesses. However, it does not mandate the same assurances for the prosecution’s witnesses. Thus, the prosecution’s use of non-service of their witness as a valid basis for their motion to continue would be without merit under §§ 502. However, only the Court is granted the authority to issue subpoenas and it must therefore be charged with the burden to assure such issuance and service for both the prosecution and defendant’s witnesses, after receiving sufficiently accurate information from the prosecution and the defense.
Our Tribal Court has not adopted Rules of Criminal Procedure, however, it has adopted Rules of Civil Procedure (FPTC R.Civ.Proc.). While we do not rely on the Civil Procedure rules in a criminal matter, we do note with interest FPTC R.CivProc. Rule 9—7(6), which reads:
“Witnesses: Each party shall identify by name and address the witnesses it intends to call at the trial. Such identification shall not make the party identifying the witness responsible for his/her appearance. ” (Our emphasis added.)
It can be said with some certainty that any failure by the Court in assuring the appearance of the defendant’s witnesses would, in most instances, justify the defendant’s right to a continuance. However, if the prosecution enjoys a similar right, it does not appear in the CCOJ and the Tribal Prosecutor does not cite any authority supporting such right.
Nonetheless, the granting or denying of a motion to continue is within the sound discretion of the Tribal Court and we will not disturb that decision absent an abuse of discretion. However, it must be noted that our Tribal Courts cannot exercise *233 their discretion arbitrarily or capriciously. A denial, and or grant, of a motion to continue must be justified under the circumstances of each case.
Preferably our Tribal Court would have published guidelines to assist not only the Court, but counsel for the parties as well, in determining whether a given motion for continuance is meritorious. However, in the absence of published guidelines, the Court must look at the “bare” circumstances in each case.
In the first instance the motion must always be based on good cause. Failure to serve a material witness through no fault of the moving party is prima facie good cause.
After the initial examination of the reason(s) prompting the motion, some of the factors our Tribal Court should evaluate in deciding whether to grant or deny a motion to continue in a criminal matter include, but are not limited to, 1) Will any of the defendant’s fundamental rights be abridged or violated? 2) Will any prejudice ensue to the opposing party? 3) Is the motion calculated to delay the trial? 4) Will granting the motion cause unreasonable delay? 5) Will denial of the motion prevent a fair trial on the merits? 6) Did either party contribute to, or cause the necessity of the motion? 7) Did the moving party exercise good faith and due diligence in attempting to avoid the situation that prompts the motion? All of these, as well as any other relevant factors, need to be reviewed during the Tribal Court’s evaluation, after which, the Court must balance the respective interests of the parties and arrive at a reasonable and just conclusion.
In reviewing the record, we find no such evaluation or analysis. The record fails to reveal any basis whatsoever for the denial of the motion. If such evaluation and analysis was undertaken by the Tribal Court in this case the record does not reveal it. Yet, the record does reveal this chronology:
Alleged offense took place: February 25, 2000
Arraignment: February 29, 2000
Pre-trial conference: March l:i. 20110
Court trial April 11, 2000
As can be seen from the chronology, only forty-nine (49) days elapsed from the alleged event to the trial date, thus no speedy trial issue had arisen, nor was the case in jeopardy of an undue delay. Tom did not demand to be tried immediately; rather, he made a motion on the same day to dismiss the matter. Nor did Tom claim that granting the motion would prejudice him. Thus, the record does not indicate that any of Tom’s fundamental rights would be infringed by granting the motion.
On the other hand, granting the motion would not have caused an undue delay, nor was the Tribal Prosecutor guilty of attempting to delay the trial. Further, it was the responsibility of the Court itself to issue and effect service of the subpoena on the Prosecutor’s material witness and it would be manifestly unjust to visit the penalty for that failure on either of the parties. It was clear that only one witness saw either of the two men at the residence and that witness was the very one that was not served. Consequently, failure of that witness to appear prevented a fair trial.
The only remaining issue is: Did the Tribal Prosecutor exercise good faith and due diligence in attempting to secure service of the subpoena on their witness? Again, the record is silent. At the pretrial conference, Karen Todd, the missing material witness, was listed as one of the Prosecution’s witnesses. Without published rales and without more guidance, how far must the Prosecution or the defense go in securing their witnesses? Are they required to check and keep checking to see if their witnesses have been served? To *234 what extent must the-.prosecution- go to cross the line of “reasonable effort”?
If there was such a chronological point in time which could be drawn, “good faith and due diligence” could be properly measured. However, without such criteria, we are left to speculate as to the extent parties are required to go to insure their witnesses are served. This problem could be solved easily by the publication of guidelines or rules by the Tribal Court. In the meantime, we will not speculate as to whether or not the prosecution was required to go beyond furnishing the names of their witnesses to the Tribal Court. That responsibility lies with the Tribal Court alone and should be in published form to insure uniform application.
When balancing all of the factors involved, we find none in support of denying the motion and virtually all of them in support of granting the motion. The only possible factor militating against the motion was the question of “good faith and due diligence” on the part of the prosecutor and, as we have shown, it requires high speculation on our part to attempt to answer the question whether the prosecution was required to go beyond the point of furnishing their witness list to the Court during the pre-trial conference.
It is clear that our Tribal Court ignored all of the factors in favor of granting the motion and denied the motion without any support whatsoever in the record. In doing so, the Tribal Court denied a fair trial to the Tribes. Accordingly, we reverse the “not guilty” judgment.
NOW THEREFORE, it is the order of this Court that the judgment of “not guilty” rendered by the Tribal Court on April 14, 2000, is vacated and the matter is remanded with instructions to conduct a new trial.
GERARD M. SCHUSTER, Associate Justice, concurs;
CARROLL JAMES DeCOTEAU, Associate Justice,
dissents.
I respectfully dissent.
The majority places the responsibility on the Tribal Court, whereas I believe the responsibility lies directly with the prosecution. In examining a similar issue the U.S. Supreme Court set some guidelines for determining a witness’s unavailability. In Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) (citing Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968)) the Court addressed the issue saying: “The law does not require the doing of a futile act. Thus, if no possibility of procuring the witness exists (as, for example, the witness’ intervening death), ‘good faith’ demands nothing of the prosecution. But if there is a possibility, albeit remote, that affirmative measures might produce the declarant, the obligation of good faith may demand their effectuation. The lengths to which the prosecution must go to produce a witness ... is a question of reasonableness.” (Citations omitted). The ultimate question is whether the witness is unavailable despite good?faith efforts undertaken prior to trial to locate and present that witness. As with other evidentiary proponents, the prosecution bears the burden of establishing this predicate, Id. 448 U.S. 56, 74-75, 100 S.Ct. 2531, 65 L.Ed.2d 597.
In short, “a witness is not ‘unavailable’ ... unless the prosecutorial authorities have made a good?faith effort to obtain his presence at trial ...” Barber at 725, 88 S.Ct. 1318.
While there may be some justification for holding that the prosecution did not have the opportunity to compel the appearance of Karen Todd, to be sure, the prosecution must attempt to show why the witness was actually unavailable. The prosecution made no such effort here. So far. as the record reveals, the sole reason *235 why Karen Todd was not present to testify in person, was because the Tribes did not attempt to seek her presence. Had the prosecution shown that Karen Todd was truly unavailable to testify, I have no doubt the motion would have been granted. However, as I have pointed out, this is not what happened in this case.
The Tribal Court relies on the Tribal Police to act as their process server. Here there appears to be a lack of communication between the tribal police department and the tribal prosecutor. This lack of communication left, the prosecutor unaware that a key witness had not been served to appear for trial. Though the record does not indicate whether the tribal police made a “good-faith” effort to find and serve Karen Todd, it is obvious through the examination of that record that their effort can best be described as lacking enthusiasm.
Though I sympathize with the prosecution’s predicament, I cannot agree with their argument. I would find that the Court did not abuse its discretion in denying the prosecution’s first time motion for continuance. In so finding, I would affirm the ruling of the Tribal Court.

. Karen lives at 325 Helena which is directly across the street from the subject residence.

. Now Title VII CCOJ 2000 § 322.

. Now Title VII CCOJ 2000 § 311.

.A jury trial was initially scheduled, however, after the pre-trial conference, Tom waived his right to a jury-trial.

. Sec. 502. Issuance ot subpoenas, (a) Upon request of the defendant or upon the Court's own initiative, the Court shall issue subpoenas to compel the testimony of witnesses, or the production of books, records, documents or any other physical evidence relevant to the determination of the case and not an undue burden on the person possessing the evidence. An employee of the Court may act on behalf of the Court and issue subpoenas which have been signed by a trial judge and which are to be served within the confines of the Reservation.
(b) A subpoena shall bear the signature of the Chief Judge or an Associate Judge of the Court and it shall state the name of the Court, the name of the person or description of the physical evidence to be subpoenaed, the title of the proceeding, and the time and place where the witness is to appear or the evidence is to be produced.
Sec. 503. Service of subpoenas, (a) A subpoena may be served at any place within or without the confines of the Reservation, but any subpoena to be served outside the Reservation shall be issued personally by a judge of the Court.
(b) A subpoena may be served by any law enforcement officer or other person appointed by the Court for such purpose. Service of a subpoena shall be made by delivering a copy of it to the person named or by leaving a copy at his/her usual place of residence or business with any person of suitable age and discretion who also resides or works there.
(c) Proof of service of the subpoena shall be filed with the Court by noting on the back of a copy of the subpoena the date, time and place that it was served and noting the name of the person to whom it was delivered. Proof of service shall be signed by the person who actually served the subpoena.