ORDER REVERSING WITH REMAND

INTRODUCTION

¶ 1 Brittney Rios appeals the August 28, 2015 Denial of Motion to Reconsider of the Fort Peck Tribal Court. This Court Grants Appellant’s appeal, reverses the judgment of the lower court, stays the probate of the Estate of Rose C. Lilley, and remands this matter back to the lower court for rehearing consistent with the direction of this court.

FACTUAL AND PROCEDURAL HISTORY

¶ 2 Rose C. Lilley died on December 6, 2014. At the time of her death, Ms. Lilley left behind an estate comprising of one Western National Bank account, a home located at 901 West Blaine in Wolf Point, MT, a 2005 Chevrolet Impala, one Federal Credit Union account, a water bill, and various personal property, furnishings, and appliances located in her home.
*422 ¶3 On March 17, 2015, Ms. Lilley’s granddaughter Brittney Rios [Appellant] filed a pro se Petition for Probate of Will in the Fort Peck Tribal Court. Along with her petition, Appellant attached a copy of a U.S. Department of the Interior Bureau of Indian Affairs will executed by Ms. Lilley on April 9th, 1996 (“1996 will”). Under the provisions of the 1996 will, Ms. Lilley’s sole heir was Appellant. The 1996 will was witnessed by Sharon Red Thunder and Michelle Buck Elk and notarized by State of Montana Notary Public Grant Stafne.
¶ 4 On March 30, 2015 the lower court clerk noticed the heirs and creditors of Rose C. Lilley that Appellant had filed a Petition for Appointment of Personal Representative of Ms. Lilley’s estate and set a hearing on the matter for April 30, 2015. The clerk served the notice upon 10 parties, 7 of which had no addresses. The record is silent as to how service was effected without addresses.
¶ 5 On April 2, 2015 tribal law enforcement personally served the Notice of Probate Hearing on Steven Lilley, Stacy Lil-ley, Julie Christian, and Lois Black.
¶ 6 Notice to Rose Lilley’s creditors ran in the Fort Peck Journal for three successive weeks. The dates of publication were May 21, 2015, May 28, 2015, and June 4, 2015.
¶ 7 On April 30, 2015 Fort Peck Tribal Court Judge Danna Runsabove held a hearing on the Petition for Probate of Will initially filed by Appellant on March 17, 2015. Appellant and Appellee Lilley appeared pro se along with Elaine Lilley Barrera, Sandra Lilley, Julie Christian, and Stacy Lilley. Appellee Lilley challenged the 1996 will and alleged, but did not produce, a will dated after the 1996 will which he asserted took priority over the 1996 will previously offered by Appellant.
¶8 On May 5, 2015 Judge Runsabove issued an Order for Appointment of Personal Representative in The Matter of the Estate of Rose C. Lilley. In its order, the lower court noted that Appellant and Ap-pellee Lilley had both supplied competing wills. The lower court appointed Appellant and Appellee Lilley Co-Personal Representatives of Rose Lilley’s estate. The lower court set a final hearing in the matter of Rose Lilley’s estate for June 10, 2015.
¶ 9 On May 5, 2015 the lower court clerk noticed the heirs and creditors of Rose C. Lilley that Appellant had filed a Petition for Appointment of Personal Representative of Ms. Lilley’s estate and set a hearing on the matter for June 10, 2015. The record is silent as to how this notice of hearing was served upon the parties.
¶ 10 On June 10, 2015 the Fort Peck Tribal Court held a hearing. Judge Marvin Youpee Jr. presided. Appellee Lilley, Terri Adams-Lilley, Julie Christian, Sandra Lilley, and Perry Lilley appeared. Appellant did not appear. At this hearing, Ap-pellee Lilley presented a second will, entitled the Last Will and Testament and Medical Power of Attorney signed by Rose Lilley and dated April 9, 2012 (“2012 will”). The 2012 will revoked any will existing at the Bureau of Indian Affairs. The 2012 will designated Appellee Lilley executor and personal representative. The 2012 will further provided for the disinheritance of any of Rose Lilley’s biological children should they contest the will. The 2012 will did not specifically address inheritance or provide for hems to take according to a set provision, but rather authorized Appellee Lilley to dispose of the estate at his discretion. The 2012 will was signed by Rose Lilley, Steven Lilley, and Elaine Lilley-Barrera. The 2012 will bears the notarial stamp of Dustin K. Brown, Notary Public *423 for the State of Montana, but does not include a signature from Dustin Brown. Appellee Lilley also presented an inventory of Rose Lilley’s estate at the time of this hearing.
¶ 11 On June 11, 2015 the Fort Peck Tribal Court issued a Probate Order in The Matter of the Estate of Rose Lilley, Deceased Indian Person. In the Order, the lower court determined that at the time of her death, Rose Lilley’s surviving heirs were Steve Lilley, Sandra Lilley, Julie Christian, Elaine Barrera, Perry Lilley, Terry Adams, Joseph Lilley, Lois Lilley Black, and Stacy Lilley. The lower court detailed that Appellant had initially filed a petition for probate on March 17, 2015 supported by the 1996 will. The lower court noted that Appellee Lilley had filed the 2012 will on April 9, 2012. The lower court revoked the 1996 will in favor of the 2012 will and named Appellee Lilley the executor of the estate of Rose Lilley. The lower court also detailed that Appellee Lil-ley had submitted an inventory of Rose Lilley’s estate. Finally, the lower court noted that nobody had appeared at the June 10, 2015 hearing to challenge the validity of the 2012 will. The lower court clerk certified on March 30, 2015 that she served ten parties a copy of the June 11, 2015 Probate by mail. Six of the parties served have no addresses listed upon which service was effected.
¶ 12 On July 22, 2015, Terry L. Boyd entered a Notice of Appearance on behalf of Brittney Rios and filed a Motion to Set Aside Judgment of the lower court Probate Order entered June 12, 2015. Appellant Rios based her motion upon the one-year allowance authorized under Federal Rule of Civil Procedure Rule 60 for motions to set aside judgment in cases of fraud, mistake, or misrepresentation. In support, she supplied an affidavit from Notary Public Dustin Brown, the notary public whose notarial seal appeared on the face of the 2012 will. In the affidavit, Mr. Brown affirmed that he had examined the 2012 will bearing his notarial seal and had found he had neither notarized it nor witnessed the signature of Rose Lilley on those documents. He further affirmed his notarial log lacked any record of his presence at the signing of the will. He also noted that the documents lacked his signature. He further asserted that he personally knew Rose Lilley and had not notarized any will for her at any time in the past. Appellant asked that the lower court set aside the Probate Order dated June 12, 2015 and invalidate the 2012 will in favor of the 1996 will. She further asked that Appellee Lilley be made to provide a full accounting of the disposition of the estate of Rose Lilley in order that the estate be returned to her. Appellant’ counsel served Appellee Lilley a copy of Appellant’ Motion.
¶ 13 On July 30, 2015 Appellee Lilley filed an Answer to the Motion to Set Aside Judgment. In his answer, Appellee Lilley argued that any allegations of fraud, misrepresentation, or misconduct were false. He further argued that the lower court had already reviewed the documents, including both wills, and ruled accordingly at a hearing at which Appellant had failed to appear. He also argued that the proper mechanism for Appellant to address the lower court’s prior ruling was to appeal rather than file a motion to set aside the judgment. He finally argued that the statutory time period for Appellant’ to mount a proper appeal had passed and the lower court’s ruling should stand.
¶ 14 On August 7, 2015 Appellant filed Petitioner’s Response to Respondent’s Answer to Motion to Set Aside Judgment. In her response, Appellant argued that Federal Rule of Civil Procedure Rule 60 authorized the lower court to set aside *424 judgements for reason of fraud, mistake, or misrepresentation by an opposing party. She argued Appellee Lilley had failed to explain why the 2012 bore a notarial seal on its face belonging to a notary public who claimed not to have notarized the will. She also argued that her failure to appear for the June 10, 2015 hearing was because Appellee Lilley and other relatives had forcibly removed her from Rose Lilley’s home with the assistance of tribal law enforcement. She further argued that Rule 60’s one-year allowance for a party to bring a motion to set aside a judgment based on fraud, mistake, or misrepresentation authorized her to bring her motion to set aside instead of mounting an appeal. She asked the lower court to set aside its June 12, 2015 Probate Order, invalidate the 2012 will in favor of the 1996 will, and that an accounting of the estate assets and liabilities be submitted.
¶ 15 On August 7, 2015 the lower court issued a Probate Order in The Matter of the Estate of Rose Lilley. In its order, the court detailed that Appellant had filed a Motion to Set Aside Judgment on July 22, 2015 based upon an affidavit from Notary Public Dustin Brown indicating that he had not notarized the 2012 will despite the presence of his notarial stamp upon the face of the document. The court further acknowledged Appellee Lilley’s claim that Appellant’ Motion was untimely. Citing a void within the Fort Peck Comprehensive Code of Justice addressing timely motions to set aside, the Court relied upon Federal Rule of Civil Procedure Rule 60, which allowed for setting aside judgments by motion up to one year afterward. The Court scheduled a motion hearing for August 27, 2015 and barred Appellee Lilley from transferring any asset of Rose Lil-ley’s estate until it rendered a final decision on Appellant’ Motion to Set Aside Judgment. The Probate Order was served by the court clerk on Appellee Lilley, Appellant, and her counsel, Terry Boyd.
¶ 16 On August 20, 2015 Imogene Lilley filed a Notice of Appearance on behalf of Appellee Lilley. She also filed a certificate of service establishing service of the Notice on Counsel Boyd.
¶ 17 On August 27, 2015 the matter was presented for hearing before the Fort Peck Tribal Court. The Appellee argued the Appellant had failed to file her motion in a timely manner.
¶ 18 On August 28, 2015 the Fort Peck Tribal Court denied Appellant’ Motion to Reconsider. The lower court’s denial was based upon a finding that the Fort Peck Comprehensive Code of Justice (“CCOJ”) failed to identify an appropriate time frame for filing a motion to set aside, leaving the court to rely upon Federal Rule of Civil Procedure Rule 60’s one-year allowance for such motions. The lower court also based its denial on the lack of supportive evidence because Appellant’ failure to present Notary Public Dustin Brown to testify in person at the August 27, 2015 hearing. The lower court clerk served Appellant and Appellee Lilley’s counsel each a copy of the denial.
¶ 19 On September 14, 2015, Appellant, through counsel, appealed the August 28, 2015 denial of her Motion to Reconsider by the Fort Peck Tribal Court. Appellant based her appeal upon the lack of due process afforded her by the tribal court. She argued that when the lower court issued its August 7, 2015 hearing scheduling order, it specifically asked for “more information” instead of noticing her that she would be required to present witness testimony to support her claim that the 2012 will was fraudulent. Appellant also argued that her due process rights were violated at the August 27, 2015 hearing when the lower court demanded she testify instead of granting her request for a con *425 tinuance to gather the witness testimony she believed would prove her case. Appellant further argued that the lower court committed legal error through abuse of discretion when it issued its June 12, 2015 probate order revoking the 1996 will in favor of the 2012 will without adequately evaluating the validity of the second will by requiring testimony from the Notary Public whose seal was found on the document without an accompanying signature.
¶20 On October 16, 2015 Steven Lilley filed a Response to Notice of Appeal. In his response, Appellee Lilley, through counsel, argued that the August 27, 2015 hearing was held correctly and also that due process had been afforded to Appellant during the proceeding. Appellee Lil-ley further argued that Appellant had been given multiple chances to prove her case through witness testimony and had twice failed to do so, once when she failed to provide a witness list to the lower court prior to the hearing and a second time when she failed to provide witness testimony at the hearing itself. Appellee Lilley also argued that Appellant’ Motion to Reconsider had been improperly founded upon an affidavit from Notary Public Brown because Appellant provided an affidavit instead of bringing Brown to the hearing to testify in person.
¶ 21 On November 12, 2015 Fort Peek Court of Appeals Chief Justice Brenda Desmond issued an Order Granting Review. On November 15, 2015 this Court’s clerk served the Order on Appellant, Mr. Boyd, and Imogene Lilley, then-counsel for Appellee Lilley.
¶22 On January 14, 2015 Fort Peck Court of Appeals Chief Justice Brenda Desmond issued a second Order Granting Review. On the same day, this Court’s clerk served the Order upon Appellant, her counsel Mr. Boyd, and Appellee Lilley.
¶23 On February 15, 2016 counsel for Appellee Lilley, Imogene A. Lilley, submitted a Motion to Withdraw as counsel of record for Appellee Lilley as she had recently been elected to the position of Associate Judge for the Fort Peck Tribal Court.

ISSUES

¶ 24 The Appellant raises the following issues on appeal:
1. Did the Tribal Court violate Brittney Rios’ due process rights at the August 27, 2015 hearing when it required Rios to provide Notary Public Dustin Brown to testify in person without having informed Rios that it was an evidentiary hearing?
2. Did the Fort Peck Tribal Court err at the August 27, 2015 motion hearing when it refused to grant Brittney Rios’ continuance so that she might secure evidence and witness testimony in support of her Motion to Reconsider?
3. Did the Fort Peck Tribal Court err when it issued its June 12, 2015 Probate Order revoking the 1996 Bureau of Indian Affairs will of Rose C. Lilley in favor of the 2012 will without the testimony of Notary Public Dustin Brown given the lack of disinterested witnesses to the 2012 will?

JURISDICTION

¶25 The Appellate Court’s jurisdiction extends to all appeals from final orders and judgments of the Tribal Court, appeals of administrative decisions where a provision of the Code authorizes jurisdiction, and final decisions of the Tribal Alcohol Licensing and Regulation Commission. 2 CCOJ Ch. 2 § 202. Hawk v. Reum, FPCOA No. 43 (1988).

*426
STANDARD OF REVIEW

¶ 26 Here, Appellant’s first two issues stem from alleged violations of her procedural due process rights. She argues these violations were clear errors of law. Her third issue is based on her claim that the Fort Peck Tribal Court abused its discretion by making an error of fact in failing to determine the 2012 will invalid under applicable authentication requirements for a will. This Court finds persuasive the position that by definition a court abuses its discretion when it makes an error of law. Koon v. U.S., 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). In cases where a party alleges a lower court committed error of law, we review for legal error using the de novo standard. 2 CCOJ Ch. 2 § 202. Using a de novo standard, this Court will review a matter as if they were approaching it for the very first time. No deference will be afforded the prior decision of a lower court regarding legal determinations. In cases where a party alleges a lower court committed error of fact, this Court shall not set aside any factual determinations of the Tribal Court if such determinations are supported by substantial evidence. Id.

DISCUSSION

¶27 This Court has a long experience with due process of law. In Fort Peck Tribes v. John Morales, 2 Am. Tribal Law 189 (2000), this Court said “due process of law is a broad concept involving many aspects of an individual’s rights” including both procedural and substantive rights. The Morales Court also discussed whether due process under the Indian Civil Rights Act (25 U.S.C. § 1301 et seq.), which applies to the Fort Peck Tribes, is the same as due process under the federal constitution. Id. at ¶ 6.
¶ 28 The Morales Court established how due process would be analyzed:
“First and foremost, we believe that basic principles of fairness impose the duty on our Tribal Court Judges to protect the rights and privileges of all persons appearing in their courts, no matter what the nature of the crime or who the person may be. At a minimum, this duty requires that all parties have ‘notice’ when their liberty or property is at risk and an opportunity to make their own claims or defense. Thus, we agree with the principle set forth in Twining v. New Jersey, 211 U.S. 78, 111, 29 S.Ct. 14, 53 L.Ed. 97 (1908) which holds that notice and a reasonable opportunity to be heard to present one’s claim or defense have been fundamental conditions prescribed in all systems of law by civilized countries. We also subscribe to the notion that, “Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation, of life, liberty, or property,” Carey v. Piphus, 435 U.S. 247, 259, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). In essence, the ‘concept of due process exists to protect individuals against arbitrary action by their government’. Berry v. Arapahoe & Shoshone Tribes (1976, D.C.Wyo.) 420 F.Supp. 934.”
Morales at ¶ 7.

ISSUE ONE

¶ 29 The first issue at hand is whether a violation of Brittney Rios’ due process rights occurred at the August 27, 2015 motion hearing when the Fort Peck Tribal Court required that Rios provide her evidence, including the in-person testimony of Notary Public Dustin Brown, without having informed Rios that it needed anything more than “more information.”
*427 ¶ 30 Appendix 2 of the Fort Peek Comprehensive Code of Justice governs civil procedure in the Fort Peck Tribal Courts. Rule 7 of Appendix 2 governs motions, time extension matters when motions have been filed, hearings on motions, and procedure for use when parties seek to bring informal matters before the court. Rule 7-3 regards hearings on motions. The Rule states:
“(a) Within the respective divisions, hearings on motions shall be set at such time and place as has been approved by the Court. The Court may order or conduct a hearing on a motion if the Court believes a hearing would be beneficial, or upon a timely written request of either party.
(b) It is incumbent upon the moving party to assure that a filed motion is set on the law and motion calendar as established by Rule 1-6. If the Court does not rule on a properly filed motion within thirty (30) days, the motion shall be deemed denied, unless this time limit is waived by the Court.”
App. 2 CCOJ Rule 7-3.
¶ 31 Accordingly, a motion hearing, such as the hearing on Appellant’ Motion to Reconsider, is not automatically the time and place when evidence is presented, but instead may simply be the time and place where the court determines whether there is evidence or testimony that a party would like to present or which the court believes would be beneficial to its decision-making process.
¶ 32 Here, the lower court scheduled a motion hearing for August 27, 2015 because it needed “more information.” This put both Appellant and Appellee Lilley on notice that they should come prepared to provide further information. Nothing in the notice gave specific direction to the parties regarding the type of information the court was seeking.
¶ 33 The Fort Peck Tribal Court erred at the August 27, 2015 motion hearing when it asked the parties for more information but did not clearly indicate that it wanted testimony from the notary public that had allegedly witnessed the signature of the second will. Nothing in the notice provided to Appellant would have alerted her that she needed to bring evidence or witnesses to this hearing. As a pro se litigant at this point in the proceedings, Appellant would have no reason to know that “information” would require anything more than showing up to the hearing.

ISSUE TWO

¶ 34 The second issue at hand is whether the Fort Peck Tribal Court erred at the August 27, 2015 motion hearing when it refused to grant Brittney Rios a continuance so that she might secure evidence and witness testimony in support of her Motion to Reconsider.
¶35 Procedural due process requires actual notice of any hearing held in a filed matter. Substantive due process requires that the party be fully informed of the nature of any scheduled hearing in order to be adequately prepared. If the notice does not provide that level of direction it is appropriate to continue the matter upon request of a party, particularly when they are unrepresented, in order that the parties have an opportunity to gather all applicable evidence and secure the attendance of any necessary witnesses for purposes of supporting their claims. A court should only deny a request for continuance when there is potentially irreparable harm to a party if a matter were to be continued to a future date or the requesting party has blatantly disregarded an express directive from the court regarding the proceeding in question.
*428 ¶ 36 Only when Appellant Rios arrived at the August 27, 2015 hearing did she find out what specific type of information the court was seeking. Nothing in the record reflects that Appellant Rios would be unable to provide the requested evidence and testimony in support of her Motion to Reconsider. It is understandable that Ms., Rios was unaware she needed to provide the actual witnesses rather than merely the affidavit given that the lower court had not previously required direct testimony of this Notary Public when determining the validity of the 2012 will, even though there was no signature from the notary public on the document and the other individuals witnessing the signing of the 2012 will were not disinterested parties. Given the circumstances surround this probate matter, Appellant Rios’ request for a continuance to obtain the attendance of this witness was reasonable to insure the validity of a will.
¶ 37 This Court previously held that the “granting or denying of a motion is within the sound discretion of the Tribal Court” and the Court’s decision will not be disturbed “absent an abuse of discretion.” Fort Peck Tribes v. Tom Stafne, 4 Am. Tribal Law 230 (2002). However, it may not exercise discretion arbitrarily or capriciously and must be able to justify its grant or denial of a motion using the circumstances found in each case.
¶ 38 In Stafne, this Court laid out a process the Tribal Court should use when evaluating whether to grant or deny a motion, including a request for a continuance.
¶ 39 The Stafne Court imposed a foundational requirement that a “motion must always be based on good cause.” Once good cause is found, the Tribal Court must conduct a seven step inquiry to determine whether the motion should be granted.
¶ 40 First, the Tribal Court should look to find whether any party’s fundamental rights would be abridged or violated if the court were to deny the motion. Second, the Court should consider whether the opposing party would be prejudiced should the motion be granted. Third, the Court should determine whether the motion is calculated to delay the progression of the case or trial through the justice system. Fourth, the Tribal Court should decide whether granting the motion would cause unreasonable delay. The fifth step requires the Court to consider whether a denial of the motion would prevent a fair trial on the merits. Sixth, the Court should ask whether either party contributed to or caused the necessity of the motion. The seventh and final step the Tribal Court should make when deciding whether to grant or deny a motion would be to ask whether the moving party exercised good faith and due diligence in attempting to avoid the situation that prompted the motion.
¶ 41 This seven step analysis outlined by the Stafne Court represents the minimum assessment that the lower court must undertake when ruling on a motion. The Stafne Court recognized that each ease may present other relevant or unique factors which need to be reviewed when evaluating whether to grant or deny a party’s motion. Only after conducting this complete evaluation of the pertinent circumstances surrounding the motion should the court “balance the respective interest of the parties and arrive at a reasonable and just conclusion.” Id.
¶42 The lower court record does not reflect that this seven step analyzes was conducted in connection with the request to continue the hearing. Nor does the record articulate grounds which could justify denying Appellant Rios’ request for a continuance. Nothing in the record re- *429 fleets a possibility of irreparable harm, prejudice to the other party, or the creation of unreasonable delay if the matter were continued. Nothing in the record reflects that Appellant Rios was requesting the continuance as a delay tactic or that her failure to comply with some directive caused the need for the continuance. Nor did the lower court address how denying or granting this continuance would impact fundamental rights and fair trial considerations. The court’s failure to identify the bases for denying this continuance under these circumstances was abuse of discretion and therefore legal error.

ISSUE THREE

¶ 43 The third issue here is whether the Fort Peck Tribal Court abused its discretion when it issued its June 12, 2015 Probate Order revoking the Rose C. Lil-lees 1996 Bureau of Indian Affairs will in favor of the 2012 will. The validity of the 2012 will had been challenged. The 2012 will was not witnessed by disinterested parties nor signed by the notary public whose seal appeared on the 2012 will. Given the fiduciary duty associated with handling the assets of a decedent, a court must take the steps necessary for insuring the wishes of the deceased are accurately reflected in any order which may be used to dispose of decedent’s assets. This duty requires that the lower court substantial comply with all procedural steps designed to protect the distribution of assets in a manner consistent with a valid will.
¶ 44 Title 12 of the Fort Peck Comprehensive Code of Justice governs all tribal probate and guardianship matters. Chapter One of Title 12 § 103 outlines the notice that is required in order to facilitate the probate of an estate of a deceased Indian. Section 103 states:
“Promptly after the petition is filed, the clerk of Court shall give notice of the time and place of hearing to determine the heirs of the deceased Indian, and call on all persons interested to attend the hearing, by posting a copy of the notice for at least twenty (20) days prior to the date of hearing in three (3) or more conspicuous places in the vicinity of the place of hearing. Notice shall also be published in a newspaper of general circulation on the Reservation at least once per week for three (3) successive weeks prior to the hearing.”
12 CCOJ § 103.
¶ 45 In order for a tribal probate hearing to proceed, the statutory requirements for notice must be met. Here, the record establishes that the publication of the notice of hearing occurred on May 21, 2015, May 28, 2015, and June 4, 2015. The record does not show that the proper public posting of the notice occurred. It is unclear from the record whether all interested parties received notice of this probate matter. Absent any formal challenge in the record regarding the sufficiency of this notice, this defect in notice will be considered harmless error.
¶ 46 Under the CCOJ, interested parties to a tribal probate are to be served in accordance with Section 104 of Title 12, which states:
“A copy of the notice of hearing shall be served at least ten (10) days before the date of hearing, either personally, by first class mail, by certified mail, or by registered mail, on each claimant, each possible heir who is known to the Court, the Superintendent, and the Tribes. Service on the Tribes shall be made by delivering a copy of the notice to the Chairman and a copy to the Secretary of the Tribal Executive Board.”
12 CCOJ § 104.
¶47 On May 6, 2015 the clerk of the lower court issued a notice of hearing in *430 The Matter of the Estate of Rose C. Lil-ley, A Deceased Tribal Member. Although the CCOJ requires service in any of the ways outlined in the code on each claimant or heir and also upon the Superintendent and the Tribes, no evidence can be found within the record to support that proper service occurred. Although problematic, absent any challenge to the sufficiency of the notice, this error wfll also be viewed as harmless.
¶ 48 As written, the 2012 will raises several issues that should have triggered greater inquiry by the lower court to determine whether the document contained the essential elements needed to demonstrate Rose C. Lilley was creating a valid will at that time she allegedly sign this document. To protect against fraud, forgery and undue influence, courts must consider several key factors when evaluating whether a will should survive any challenge to its validity. 12 CCOJ § 113.
¶ 49 In order to be valid, any will of an Indian person must meet all statutory requirements imposed by applicable law. In accordance with tribal law a will “must be in writing and signed by the decedent in the presence of two (2) witnesses who then and there signed the will as witnesses” Id. Further clarification of this requirement is found in the federal code of regulations, which appear to be applicable law in this situation under tribal law. 8 CCOJ § 501(a). Based on the federal regulations governing American Indian probate matters, a will is not valid unless it is dated, executed in writing by someone over the age of 18, 25 C.F.R. § 15.3, and witnesses by two disinterested adults. 25 C.F.R. § 15.4 (2008). Unlike the situation in In the Matter of the Estate of Lucille Snell, 4 Am. Tribal Law 244 (2002), it is not clear from the record before this Court that the two individuals witnessing the purported will were disinterested parties to decedent’s estate.
¶ 50 Additional tribal law requires that the court make findings that “at the time the decedent made the will, the decedent was of sound and sane mind, understood what he/she was doing and was not subject to undue influence or duress of any kind from another person.” 12 CCOJ § 113. Nothing in the record reflects that this type of finding was made by the lower court. This Court previously addressed the importance of the lower court enumerating the evidence relied upon when reaching a decision regarding the valid of a will in a probate matter. In the Matter of the Estate of Lucille Snell, 4 Am. Tribal Law 244 (2002). The Snell Court recognized that a variety of factors go into making determinations regarding a decedent’s capacity and whether another person exercised inappropriate control over the deceased. Given the lack of statutorily imposed elements defining the types of evidence that must be used when making these findings a court must exercise its discretion. This type of discretion places a significant responsibility on the lower court to carefully consider both direct and circumstantial evidence that can prove the validity of a will. The court must also seek out testimony from independent disinterested professionals and witness to help determine the capacity of the decedent at the time any will being challenged was signed and the circumstances surrounding the creation of the will. A court’s failure to articulate through specific finding, which satisfy the requirements found in applicable laws, that a valid will exists, constitutes an abuse of discretion.

CONCLUSION

¶ 51 For the aforementioned reasons this Court finds that a violation of Appellant Rios’ due process rights occurred at *431 the August 27, 2015 motion hearing when the Fort Peck Tribal Court required that Appellant provide her evidence, including the in-person testimony of Notary Public Dustin Brown, without specifically informing Appellant in the hearing notice that this would be required. Appellant Rios’ due process rights were further violated when her request to continue the hearing in order to obtain the attendance of the witness was denied without justification or showing of irreparable harm or prejudice to any interested party.
¶52 This Court further finds that the lower court abused its discretion by finding a will valid without enumerating the evidence it relied upon to support its decision that the necessary elements for a valid will had been satisfied. For the reasons stated above, this Court hereby Grants Appellant Brittney Rios’ appeal, reverses the judgment of the lower court, stays the probate of the Estate of Rose C. Lilley, and remands this matter back to the lower court for proper determination of the validity of the will in accordance with all applicable laws.
SO ORDER.